L. BUCKI & SON LUMBER CO. et al. v. ATLANTIC LUMBER CO. et al.

(Circuit Court of Appeals, Fifth Circuit. February 9, 1904.)

No. 1,315.

1. ABATEMENT—WAIVER OF GROUNDS—DELAY IN FILING PLEA.

Where a corporation plaintiff was dissolved before the action was tried, the defendant cannot proceed to trial, and, after waiting until a judgment in its favor has been reversed on a writ of error and the cause remanded for a new trial, file a plea setting up such dissolution in abatement.

2. SAME—DISSOLUTION OF CORPORATION PLAINTIFF—NEW JERSEY STATUTE.

Under the corporation laws of New Jersey (P. L. 1896, p. 295, § 53), which provide that corporations after their dissolution shall be continued bodies

¶ 2. Dissolution of foreign corporations, see note to Republican Mountain Silver Mines v. Brown, 7 C. C. A. 421.

See Abatement and Revival, vol. 1, Cent. Dig. §§ 194, 196, 197; Corporations, vol. 12; Cent. Dig. §§ 2454, 2589.

corporate for the purpose of prosecuting and defending suits by or against them, the dissolution of a corporation does not abate an action brought by such corporation in Florida to recover damages to its estate, business, and credit by reason of an alleged wrongful attachment of its property; the cause of action being one which survives under the laws of Florida.

3. EXECUTION—GROUNDS FOR STAY.

A judgment defendant is not entitled to a stay of execution on the ground that an unsatisfied judgment previously obtained by it against the plaintiff, but which it assigned to a third party, may in a certain contingency be reassigned so as to enable defendant to set it off against the present judgment.

4. JUDGMENTS—RIGHT OF SET-OFF—EFFECT OF ASSIGNMENT OF DEMAND BEFORE JUDGMENT.

The assignment of a demand in suit by the plaintiff to his attorney, who has a statutory lien thereon, prevents the accruing of any right to the defendant to set-off, against a judgment subsequently rendered thereon, a judgment previously recovered against the plaintiff.

5. MANDAMUS—ENFORCING OBEDIENCE TO MANDATE—SCOPE OF RELIEF.

A judgment for defendant in a Circuit Court was reversed on a writ of error, and the cause remanded with directions to award a new trial and to issue execution against the defendant for the costs of the appellate court. The Circuit Court, without sufficient cause, granted a stay of execution, and also erroneously sustained a plea in the nature of a plea in abatement filed by defendant, but without entering any final order or judgment in the case from which a writ of error would lie. Plaintiff applied to the Circuit Court of Appeals for a writ of mandamus to compel the Circuit Court to set aside the staying order and to proceed with the new trial. Held that, the remedy by mandamus being undoubtedly appropriate to enforce obedience to the court's mandate for execution, and the court having the full record before it relating to the ruling on the plea, it would treat the proceeding as in effect one on a writ of error, and deal with the whole case, instead of compelling the plaintiff to await the future action of the Circuit, and to again bring up the same record by writ of error.

Petition for a Writ of Mandamus to the Circuit Court of the United States for the Southern District of Florida.

The proceedings in this case were commenced by the following petition:

"Your petitioners, L. Bucki & Son Lumber Company and Horatio Bisbee, respectfully allege that in action at law brought in the Circuit Court of the United States for the Southern District of Florida, wherein said L. Bucki & Son Lumber Company was the plaintiff, and the Atlantic Lumber Company, Arthur Meigs, Daniel G. Ambler, and Richard H. Liggett were the defendants, such proceedings were had that on the 16th day of January, A. D. 1902, a final judgment therein was rendered in and by the said court for the said defendants. That thereupon the said plaintiff sued out from the United States Circuit Court of Appeals for the Fifth Circuit, and prosecuted, a writ of error to reverse the said judgment, and such proceedings were had upon the said writ of error that afterwards, to wit, on the 10th day of March, A. D. 1903, the said United States Circuit Court of Appeals rendered its judgment, whereby the said judgment of the Circuit Court was reversed. And the said Circuit Court of Appeals, by its mandate duly issued in the said action, ordered and commanded the said Circuit Court to enter up in the said court a judgment for costs on the said writ of error against the said defendants, and to issue an execution for which costs, to which mandate reference is here made. Your petitioners allege that, in obedience to said mandate, the said Circuit Court did enter a judgment against the defendants in the said court for the said costs, to the amount of fourteen hundred and twenty-four and $24/100$ dollars ($1,424.24), as appears from the records of said court, and that afterwards, to wit, on the 23d day of April, A. D. 1903, execution in due form was issued out of the said court upon the said judgment against the said defendants for the said sum of $1,424.24, and that the said execution was duly delivered to the United States marshal, who duly levied the same upon the lands and tenements of the said defendant

Richard H. Liggett, for the ·purpose ·of obeying the commands to him in the said execution contained, and of collecting the amount of the said judgment for the said costs. · And your petitioners aver that afterwards, to wit, on the —————— day of June, A. D. 1903, the said Circuit Court, on the application of the said defendants, without any legal excuse or judicial power, ordered an indefinite stay of the said execution, and the said marshal, John F. Horr, not to further execute the said execution until the further order of the said Circuit Court, and that no further order has ever been made. And your petitioners allege that. the said Horatio Bisbee was the attorney for the plaintiff in the said action, and prosecuted for the said plaintiff the said action and the said writ of error, and that the amount of the fees earned by the said attorney for his services in the premises greatly exceed the amount of the said judgment, and that the necessary costs and disbursements actually made by the said attorney in the said action, and which were paid by the said attorney out of his own pocket and from his own moneys, greatly exceed the amount of said judgment. And that the said fees, costs, and disbursements are, under the laws of the state of Florida, a lien upon the said judgment, superior to all other liens and all other rights. Your petitioners allege that the said Circuit Court has refused and still refuses to obey the commands of the said mandate' in the said action. And your petitioners further allege that the said mandate commanded the said Circuit Court to grant a new trial in the said action, and thereafter to proceed according to law, and in accordance with the views and opinions of the said United States Circuit Court of Appeals; and the said Circuit Court, in obedience to the said mandate, did enter an order in the said action granting a new trial therein. But your petitioners aver that afterwards, to wit, on the —————— day of June, A. D. 1903, the said court, against the objection of the said plaintiff, duly made by its counsel in open court, did grant leave to the said defendants to file, and the said defendants did file, in pursuance of such leave, in the month of June aforesaid, a certain document which defendants soon after amended, and which, as amended, was intended as a plea in abatement of the further prosecution of the said action, and is in the words and figures as follows, to wit:

" 'In the United States Circuit Court, Southern District of Florida.

" 'L. Bucki & Son Lumber Company v. The Atlantic Lumber Company, Richard H. Liggett, Daniel G. Ambler,· and Arthur Meigs.

" 'Now come the defendants herein, by their attorney, and for the purpose of meeting· the ground of demurrer to their plea filed herein on the —————— day of June, 1903, amend said plea so as to read as follows: That the L. Bucki & Son Lumber Company, plaintiff herein, was duly incorporated under the laws of the state of New Jersey on the first day of October, 1892, with an authorized capital stock of $250,000, and that thereafter, prior to January 1, 1897, it issued the full amount of its capital stock of $250,000. And a copy of the charter of said company is herewith filed and made part hereof. That the L. Bucki & Son Lumber Company was organized for the purpose of manufacturing and dealing in lumber, and that over fifty per cent. of its capital stock was invested in a sawmill plant situated at Jacksonville, Florida, and continued so to be from January 1, 1894, to January 1, 1898, and that no appreciable part of its property was at any time physically located in the state of New Jersey during the year of 1897. That on June 7, 1897, the State Board of Assessors for the state of New Jersey certified and reported to the Comptroller of the State of New Jersey that the amount of the capital stock of the said L. Bucki & Son Lumber Company was $250,000, and that the tax due thereon was the sum of $250.00; and that thereupon there became due to the state of· New Jersey from the said L. Bucki & Son Lumber Company the said· sum of $250 for the taxes of 1897; that said tax has never been· paid; and that on May 2, 1900, the Comptroller of the State of New Jersey reported the fact· of the nonpayment of said tax to the Governor of the State of New Jersey, who did thereupon, on the said 2d day of May, 1900, and since the last pleading in this action, issue a proclamation declaring the charter· of said L. Bucki & Son Lumber Company void, a copy of which proclamation is herewith filed, and is prayed to be read and taken as part of this plea; that said proclamation· was duly filed in the office of the Secretary of State for the

state of New Jersey, and that said proclamation was duly published for one week in the newspapers specified in said proclamation, as provided for therein.

"'R. H. Liggett, Defendants' Attorney.'

"And the said document was verified. Your petitioners aver that afterwards, in the month of June aforesaid, the said plaintiff filed in the said action a demurrer and motion to the aforesaid document, in the words and figures following, to wit:

"'In the Circuit Court of the United States, Southern District of Florida.

"'L. Bucki & Son Lumber Company, Plaintiff, v. The Atlantic Lumber Company, Richard H. Liggett and others, Defendants.

"'Comes now the plaintiff by its attorneys, Bisbee & Bedell, and demurs to the amended plea of defendants, intended as a plea in abatement, upon the following grounds: First. That the plea states no fact constituting a ground for a dismissal of said suit. Second. That, under the statutes of New Jersey, the plaintiff corporation continued in existence for the purpose of prosecuting and defending suits, and winding up its business and affairs, even though the proclamation of the Governor was effective to dissolve the plaintiff corporation. And no other grounds appearing on the face of said amended plea.

"'I hereby certify that, in my opinion, the foregoing demurrer is well founded in point of law.                [Signed]      H. Bisbee.'

"'Motion.

"'Now comes the plaintiff in the above-entitled action, and moves the court to strike the amended plea, intended as a plea in abatement in above action, on the following ground: That the court has no authority to allow the said plea to be filed, and on the ground that the defendants, long after they knew of the said proclamation of the Governor, voluntarily submitted themselves to the jurisdiction of the United States Court of Appeals, and submitted the merits of the said action to the said court, and thereby the said defendants are estopped and have waived their right to interpose the said plea in abatement.'

"That the said demurrer was duly verified, and the same and the said motion were duly signed by the plaintiff's attorney; and soon thereafter, to wit, 'in the month of June aforesaid, the said court, by its orders of record, denied the said motion and overruled the said demurrer; and your petitioner avers that the said court has not made and entered any formal judgment dismissing the said action, which must necessarily follow from the said orders made and entered as aforesaid.' Your petitioner avers that the said proceedings of the said officers of the state of New Jersey in the aforesaid document filed by the defendants, stated and intended as a bar to the prosecution of this action, were all had and were all performed, as shown therein and by the record of this action, and about twenty months prior to the trial of the said action in the said Circuit Court, and nearly three years prior to the trial and judgment in said action in the said United States Circuit Court of Appeals; and your petitioner avers that the said defendants were and are chargeable with a knowledge of the said proceedings by the said officers of the state of New Jersey, and that a petition was filed in the said action by the defendants on May 23, A. D. 1903, for the purpose of obtaining a stay of the said execution which contains the following averment, to wit: 'That your petitioner the Atlantic Lumber Company was wholly ignorant of the dissolution of the L. Bucki & Son Lumber Company until the ——— day of ———, 1902, and your petitioners Daniel G. Ambles and Richard H. Liggett were wholly ignorant of the dissolution of the said L. Bucki & Son Lumber Company until after October 1, 1902.' And your petitioner avers that, having the knowledge aforesaid, the said defendants were silent, and voluntarily submitted themselves to the jurisdiction of the said courts, and each of them, for a judgment upon the merits of the said action, after having said knowledge of the said proceedings of the said officers of the state of New Jersey, and said defendants were and are estopped from setting up the said proceedings as a bar to the further prosecution of the said suit. And your petitioners aver that on or before the 26th day of July, A. D. 1898, the plaintiff, for value received, duly assigned by contract in writing all its claims in suit in the said

action against all and each of the said defendants to the said Horatio Bisbee to secure the payment to the latter for his professional services before the date aforesaid rendered, and thereafter to be rendered, in the said and other actions for and against the said plaintiff, and the said assignment expressly provided that the said assignee should have the right to prosecute the said action against the said defendants, and collect the proceeds thereof, which said assignment, and its nature and character, as herein alleged, was duly set up in the said action by a replication to the said document intended as a plea in abatement by defendants in said action, and said replication was demurred to, and said demurrer sustained by the said Circuit Court. And your petition-. ers, in support of their petition, refer to the printed transcript of the record of said action, and to copies thereof on file in the said Court of Appeals, and pray the said court to refer to the same as often as may be necessary. And your petitioner avers that the aforesaid orders of the said Circuit Court, made and entered in the said action as aforesaid, are in violation of the legal rights of the plaintiff under the said mandate, and that it has no adequate legal remedy, except by a writ of mandamus. Wherefore your petitioner prays for a writ of mandamus from this honorable court, directed to the said Circuit. Court, and to the judges thereof, commanding them to vacate the aforesaid order staying the said execution for costs, and commanding them to strike from the files of the said action the 'aforesaid document filed by the defendants in the month of June, A. D: 1903, setting up the said proceedings of the said officers of the state of New Jersey, stated in the said document, and commanding them to proceed to execute the said mandate in the said action, and to grant such other and different relief as petitioners are entitled to. And your petitioner will ever pray," etc.

An alternative writ having been ordered, the judge of the Circuit Court made return as follows:

"To their Honors the Judges of the Circuit Court of Appeals for the Fifth Circuit of the United States, James W. Locke, Judge, shows cause against the issuance of a writ of mandamus herein as follows:

"(1) That on March 10, 1903, your honors entered a judgment herein reversing the judgment of the Circuit Court, and held and decided that certain evidence introduced at a former trial of the action at law tended to sustain the allegations of the declarations that the writs of attachment therein described had been sued out by the defendants therein maliciously and without probable cause, and your honors did reverse the finding of the Circuit Court on that point, and at the same time your honors did review and revise certain decisions of the Circuit Court made in connection with the admission and rejection of evidence in said action. That your honors remitted the cause to the Circuit Court, with instructions to give a new trial and to proceed according to law and the opinion of your honorable court, duly rendered and filed in said cause. That your honors did not render a final judgment on said action, or give any judgment in said cause to which this respondent could refer for guidance, other than those referred to, which would have required this respondent, in another trial of the action, to conform the rulings of the Circuit Court to the decisions rendered by your honorable court. That the respondent has duly entered an order granting a new trial of the action. That on June 18, 1903, the defendants in the action presented to the Circuit Court the following plea, and applied for leave to file the same, to wit: 'Now come the defendants, the Atlantic Lumber Company, Daniel G. Ambler, Arthur Meigs, and Richard H. Liggett, by their attorney, and, for a plea to the declaration herein, say that after the last pleading herein, to wit, on the 2d day of May, 1900, the L. Bucki & Son Lumber Company, plaintiff herein, was dissolved, and its charter became null and void, as will appear from the proclamation of the Governor of the State of New Jersey, a copy of which is hereunto attached and made a part of this plea.' Which plea was duly signed and verified according to the practice and statutes of Florida, and a copy of the proclamation referred to is hereto attached, marked 'Exhibit A,' and is to be read as part of said plea. In the opinion of respondent, the plea alleged facts which, if true, presented a substantial defense to the action: and respondent, in the exercise of the discretionary powers vested in the judge

of the Circuit Court, gave leave to the defendants to file said plea, and caused an order to be entered accordingly. That on the same day the plaintiff filed the following demurrer to said plea: 'Comes now the plaintiff, by Bisbee & Bedell, its attorneys, and demurs to the plea of defendants' abatement, filed by leave of court on June 18, 1903, upon the following grounds: First. It states no facts establishing that the plaintiff has not, in law or in fact, a legal existence; second, that, under the laws of New Jersey, the plaintiff did have, at the date of the plea, and has now, a legal existence, and is competent to prosecute the said action; third, that, as shown by the alleged proclamation of the Governor of New Jersey, it was issued without giving any notice to the plaintiff, and is null and void.' That said demurrer was duly certified to by counsel, and duly verified. That on June 20, 1903, the plaintiff filed the following replication to the said plea: 'That all the claims and demands embraced in suit in said action, and declared on therein, heretofore, to wit, on the 26th day of July, 1898, were, for value received, duly assigned and transferred by the plaintiff to Horatio Bisbee, which said assignment was in writing, and is made part hereof, and is in the words and figures following, to wit: [A copy of said assignment is attached hereto, marked 'Exhibit B.' and is to be read as part hereof.] And the plaintiff says that at the time of such assignment the plaintiff was indebted to Horatio Bisbee, the said assignee, in a sum of money exceeding $15,000 for professional services before then rendered, and retainers then due and unpaid, and that at the date of the said plea in abatement the plaintiff was indebted to the said Horatio Bisbee for professional services, covered and intended to be secured by the said assignment, in a sum exceeding $35,000, which said several sums of money at the time aforesaid remained, and still remain, unpaid. That afterwards, on June 24, 1903, the defendants filed the amended plea recited on pages 4 and 5 of the petition, and on the same day the plaintiff filed the demurrer and motion recited on pages 6 and 7 of the petition. That on June 24, 1903, the defendants filed a demurrer to the said replication, setting up an assignment of the cause of action to H. Bisbee, Esq., on the grounds following: 'First, because it avers no facts that constitute a good and sufficient reply to the said plea to which it is pleaded; second, because said assignment mentioned in said replication is null and void; third, because the said cause of action determined and terminated upon the dissolution of the L. Bucki & Son Lumber Company.' That the demurrer to the amended plea, the motion to strike said plea, and the demurrer to the second replication afterwards came on to be heard before the Circuit Court, and were elaborately argued by counsel. The regularity of the taxation proceedings in the state of New Jersey were not contested by the replications thereto, but it was insisted by counsel for plaintiff that the plaintiff corporation could not have been legally dissolved, save through the judgment of a court of competent jurisdiction in a judicial proceeding instituted for that purpose, and that the provisions contained in the law of New Jersey under which it was claimed the plaintiff corporation had been dissolved did not constitute due process of law, and that, assuming the corporation to have been legally dissolved, the action might still be maintained by the corporation by virtue of sections 53, 54, 55, and 56 of chapter 185, Laws of the State of New Jersey, approved April 21, 1896, or else said action might be maintained in the name of the corporation by virtue of the assignment of the cause of action to H. Bisbee, Esq., set up in the second replication to the plea. Upon an inspection of the laws of New Jersey, it appeared to this respondent that this charter was granted subject to the right of amendment, alteration, and repeal at the pleasure of the state, and that an express statute in force at the time of the allowance of the charter provided that, upon the failure of a corporation for two consecutive years to pay any tax which should be assessed against it under any law of the state, the charter should be void, and all powers conferred by law upon such corporation were thereby declared inoperative and void, etc.; and it further appearing that said statute was re-enacted, in substance, on April 21, 1896, and has been in force from March, 1891, to this time, this respondent became convinced that the occurrence of the facts stated in the plea had dissolved the plaintiff corporation. From examination of sections 53, 54, 55, and 56 of chapter 185, Act of April 21, 1896, this respondent came to the conclusion that such act

was designed to furnish a convenient means of administering the assets of a dissolved corporation, and that the assets contemplated by the statute were of the same character as a court of equity habitually preserves to the creditors and stockholders of a dissolved corporation, or such as pass to an assignee in bankruptcy or insolvency, or to a receiver, or such as survive to the personal representative of a deceased person, and that while the statutory trustees of a dissolved corporation might sue and be sued in the name thereof, or in their own names, such suits were expressly confined to property rights, and to rights arising out of contract, expressed or implied. Being of the opinion, on the whole, that, upon the admitted facts, the corporation had been dissolved, and that the cause of action sued on had been extinguished thereby, this respondent gave judgment accordingly, and entered an order overruling the demurrer to the plea; and further being of the opinion that the defense had been seasonably presented, and that all the questions involved in said plea had been left open by the mandate of your honors, this respondent also overruled the motion to strike the said plea from the record. Upon consideration of the demurrer to the replication setting up an assignment of the cause of action, the respondent was of the opinion that this cause of action was not assignable, and also that an assignee could not, after the dissolution of a corporation, continue to maintain in its name a suit on a cause of action which did not pass to its statutory trustees, and which they could not have maintained an action upon, and this respondent gave judgment in accordance with this view, and entered an order sustaining the demurrer to the replication setting up the assignment of the cause of action. That, at the time of entering the orders mentioned, the Circuit Court gave the plaintiff leave to file additional pleadings as it might be advised, and that subsequently, on the 25th day of July, 1903, the plaintiff filed two replications to said plea, and that the defendants demurred to one of said replications, and moved to strike the other, and that said demurrer and motion were submitted by the parties to the Circuit Court for decision on or about December 6, 1903, and that action thereon has been delayed pending the decision by your honors of the petition for mandamus.

"(2) This respondent further shows unto your honors that on April 22, 1903, an execution issued out of the Circuit Court, on the mandate of the Circuit Court of Appeals, for the costs of prosecuting the writ of error in this action, and was delivered to the marshal to be levied. That on June 22, 1903, the defendants filed a petition in the Circuit Court praying that an order might be entered staying the enforcement of said execution, a copy of which petition is hereunto attached, marked exhibit 'C' and it is prayed that the same may be taken and read as part of this return; that, upon consideration of the said petition, this respondent was of the opinion that such a state of circumstances existed as entitled the defendants to a temporary stay of execution, and that irreparable injury might be suffered by the defendants from the collection of the execution, while plaintiff's rights could be fully protected by the exaction of security, and that the respondent accordingly entered an order on June 27, 1903, staying the enforcement of the execution until the first day of the next term of the court (December term, 1903), upon condition that the Atlantic Lumber Company gave bond in the sum of $2,000 to abide the final order of the court, and that the respondent embodied his reasons for granting that order therein, a copy of which is hereunto attached as Exhibit D, and it is prayed that the same may be read as part hereof.

"The above narrative recites the circumstances under which the orders complained of were entered, and this respondent's reasons for making said orders, and respondent submits the same to your honors for your consideration, and judgment whether or not a writ of mandamus should issue. And now, having fully answered, this respondent prays to be hence dismissed."

To the return petitioners demur and reply as follows:

"Come now the said petitioners, by Bisbee & Bedell, their attorneys, and demur to the several parts of the respondent's return to the rule to show cause, hereinafter stated, upon the following grounds:

"First. Said return admits the truth of every material fact stated in the petition, and alleges no material facts in the first five pages thereof sufficient to defeat the petitioners' right to a mandamus to compel a new trial.

"Second. So much of said return as attempts to state what this court decided on a writ of error is immaterial, because this court knows best what it decided.

"Third. So much of said return as sets up certain proceedings by the officers of the state of New Jersey under certain statutes thereof, even though they were effective to dissolve the corporation petitioner, constitute no reason for abating the suit: (a) Because the statutes of said state specified in the said return expressly continued the existence of the corporation for all purposes of prosecuting and defending all suits by or against it; (b) and because, under those statutes, it was the duty of the said corporation 'to sue for and recover' all debts and property thereof (sections 53, 54, and 55), and the claims and choses in action declared on in the said action are the property of said company; (c) and because the question of what choses in action survive the death of a natural person has no application in the case; (d) because the claim for damages to property, business, and credit of the corporation declared on in the action was assignable under the laws of Florida, where said assignment was executed.

"Fourth. The said respondent had no power or jurisdiction to allow the said plea in abatement to be filed.

"And petitioners demur to so much of said return as is contained in the sixth page thereof, stating respondent's reasons for staying the execution of this court, upon the following grounds:

"First. The said respondent had no power or jurisdiction to entertain said petition for such stay, nor to stay said execution.

"Second. Upon the facts averred in the said petition, and especially the facts showing an attorney's lien on the judgment of this court, upon which the execution issued for all the costs and disbursements which were paid by the said attorney, for which said judgment was rendered, and for his services in said action, defeats and precludes, both in law and equity, any right of set-off set up in return, in Exhibits C and D thereof.

"Third. Because the said assignment, not denied by any pleading in the said action, nor by the said return, which assignment was made over eighteen months before judgment versus the Fidelity & Deposit Company on the claims so assigned was in part recovered, and four years before the alleged assignment by the Atlantic Lumber Company to the said Fidelity Company of the alleged judgment versus the Bucki Company, defeats any such set-off, and no consideration was paid for the said assignment.

"Fourth. Because the said respondent utterly ignored the rights of the said attorney and the said assignee, whereas it was his duty to protect them.

"Fifth. Because the torts and unlawful acts of the Atlantic Lumber Company in improperly suing out the said attachments caused the very damage to and the diminution of the estate of the Bucki Company for which said judgment versus the Fidelity Company was recovered, and neither the said Atlantic Lumber Company, nor its said assignee, have any standing in law or equity to take those damages, to pay, by way of set-off or otherwise, the said judgment of this court versus the Atlantic Lumber Company, to the exclusion of the attorney and creditor of the Bucki Company whose services and disbursements obtained the said judgment.

"Sixth. Because the Atlantic Lumber Company cannot take advantage of its own torts and unlawful acts, or raise any equity thereon for a set-off, even against the said Bucki Company.

"Seventh. Because the Atlantic Lumber Company never executed the said attachment bonds, and was not an obligor thereon, and the relation of principal and surety upon the bonds between the said company and the said Fidelity Company never existed, as will appear from the inspection thereof in the records of the said action in his court.

"Eighth. And for other reasons appearing from the face of the said return of respondent.

"And these petitioners, replying to so much of the said return, on page 5 thereof, as sets up two replications to the said plea in abatement not disposed of by the said Circuit Court, say that there were three replications, and that they raised the same questions of law in another form of pleading, which had previously been decided adversely to the plaintiff; that demurrers

were filed to two of the said replications, and a motion to strike the other was filed, and that, since the said respondent's return was served upon your petitioners, the said respondent has sustained the said demurrer and the said motion; and that thereby all pleadings to the said plea in abatement have been disposed adversely to petitioners. And your petitioners aver that stay of execution on the judgment versus the Bucki Company, referred to on page 13 of the respondent's return, was ordered in July, 1898, about eighteen months before the recovery of the judgment versus the Fidelity Company, and consequently the statement in said return, on page 13 thereof, that 'the enforcement of such execution has now been stayed for upwards of six·years because the L. Bucki & Son Lumber Company did recover a judgment against the Fidelity & Deposit Company of Maryland as surety on the bond of the Atlantic Lumber Company,' is obviously incorrect. Said stay of execution was made on the ground that the Bucki Company had pending against the Atlantic Company sundry suits, claiming large damages."

Horatio Bisbee and Geo. C. Bedell, for petitioners.
R. H. Liggett, for respondents.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge. Conceding the regularity and validity of the proceedings in the state of New Jersey under Pub. Laws April 21, 1896, c. 187 (P. L. 1896, p. 319), as set forth in the quasi plea in abatement, still we think said plea comes too late, and is bad in substance. It is not a plea to the merits, but sets up facts which were in existence long before the trial of the action on the merits in the Circuit Court. The Atlantic Lumber Company was charged with knowledge of such facts, and admits actual knowledge before hearing on error in this court. To allow the plea now is to put the Atlantic Lumber Company in the attitude of successfully experimenting with the court.

Section 53 of the Pamphlet Laws of New Jersey of 1896 (P. L. p. 295) is as follows:

"All corporations, whether they expire by their own limitation or be annulled by the Legislature or otherwise dissolved, shall be continued bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them to settle and close their affairs, to dispose of and convey their property and to divide their capital, but not for the purpose of continuing the business for which they were established."

The word "suits" is a very comprehensive term, and includes all actions at law, ex contractu and ex delicto, and all actions in equity. See Weston v. Charleston, 2 Pet. 449, 7 L. Ed. 481; Bouv. Law Dict. verbo "Suits." This section 53, therefore, in terms, fully provides for the continuation of suits by or against the dissolved corporation, notwithstanding the dissolution, and such is the construction of the New Jersey courts. Grey v. Newark Plankroad Co., 65 N. J. Law, 603, 48 Atl. 557. See American Surety Company v. Great White Spirit Company, 58 N. J. Eq. 526, 43 Atl. 579. The same construction has been given in the Fourth Circuit in Boyd v. Hankinson et al., 92 Fed. 49, 34 C. C. A. 197.

The sections succeeding section 53, Pamphlet Laws aforesaid—54 to 60—do not, in our opinion, in any wise limit the scope of section 53, but, in line therewith, relate to proceedings to be had in the matter of winding up dissolved corporations.

It is suggested that, as the New Jersey proceedings dissolved the corporation, the present suit must abate, notwithstanding section 53, because it is a personal action for malicious prosecution, and therefore cannot survive dissolution.    The first answer to this is that the New Jersey proceedings did not dissolve the corporation, quoad the prosecution of suits, and that statute is controlling in the matter.    See sections 53, 59, New Jersey Laws, supra.    The second answer is that this suit is not one of those actions for personal injuries which, under section 989 of the Revised Statutes of Florida, of 1892, die with the person.    While, in a general way, it would be called an action for malicious prosecution, it is really an action to recover damages for trespass upon property; or, as otherwise stated, it is an action to recover damages to the estate, business, and credit of the Bucki & Son Lumber Company. The distinction is recognized by the Supreme Court of Florida in Jacksonville St. Ry. Co. v. Chappell, 22 Fla. 616, 1 South. 10, and we think sound reason requires the holding that where the damages from a tort are to the estate of the plaintiff, as distinguished from damages to the person, the right of action survives.    For authorities on the subject, see 25 Ency. Pl. & Pr. p. 328.

The order of the Circuit Court staying the execution issued under the judgment of this court for costs appears to be based upon the following state of facts:    The Atlantic Lumber Company had recovered a judgment in the Circuit Court, afterwards affirmed by this court, against the Bucki & Son Lumber Company.    Subsequently the Bucki & Son Lumber Company obtained a judgment in the Circuit Court, rendered on mandate from this court, against the Fidelity & Deposit Company of Maryland, growing out of matters wherein the Fidelity Company was a surety for the Atlantic Lumber Company.    Thereupon the Atlantic Lumber Company assigned its judgment against the Bucki & Son Lumber Company to the Fidelity Company to be used as a partial set-off, and proceedings to compel such set-off were instituted, and are still pending.    Now the Atlantic Lumber Company claims that the execution issued against itself under the mandate of this court in the instant case, and in favor of the Bucki & Son Lumber Company, should be stayed to await the event—the success or failure of the Fidelity Company to obtain the set-off above referred to—with the view that, if the Fidelity Company fails to establish its right to set off the judgment in favor of the Atlantic Lumber Company and against the Bucki & Son Lumber Company against the judgment in favor of the Bucki & Son Lumber Company against itself, then a reassignment of the judgment obtained by the Atlantic Lumber Company against the Bucki & Son Lumber Company will enable the Atlantic Lumber Company to plead the same as a set-off against the judgment and execution for costs rendered under our mandate in the instant case.    On this state of facts, it seems that the order staying the execution was improvident. The Fidelity Company is no party to the present suit, the Atlantic Lumber Company owns no judgment against the Bucki & Son Lumber Company, and is not entitled to have execution against itself stayed to await a possibility that it may some time have a judgment which it may be able to plead as a set-off.

This seems to dispose of the order staying execution, but there is a further answer: Prior to the obtaining of judgment in the instant case against the Atlantic Lumber Company, the Bucki & Son Lumber Company had assigned the cause of action to petitioner H. Bisbee, who, at the time judgment was rendered, was the owner of the same. It seems to be reasonably well settled that "an assignment of a demand before the entry of judgment upon it gives to the assignee a superior equity to that of a party claiming a right to set off a judgment previously recovered against the assignor, and prevents the right of set-off from accruing, since there can be no right of set-off under judgments until both exist." 25 Ency. Law, p. 618, note 5. We do not think that the Atlantic Lumber Company is in any position to question the assignment to Bisbee. It appears to have been in consideration of professional services rendered and to be rendered, and for moneys, costs, and expenses of litigation advanced. Outside of the assignment, Bisbee, as attorney recovering the judgment, has a lien on the same, not to be divested by any set-off of judgment recovered on prior independent transaction. Carter v. Bennett, 6 Fla. 214, 258, 259; Carter v. Davis, 8 Fla. 183. See In re Paschall, 10 Wall. 483, 496, 19 L. Ed. 992; Central Railroad & Banking Co. of Georgia v. Pettus, 113 U. S. 117, 127, 5 Sup. Ct. 387, 28 L. Ed. 915.

From what we have said, it follows that in our opinion the quasi plea in abatement should not have been permitted filed, and, if filed, should have been promptly overruled, and that the order staying the execution for costs, as directed in our mandate, should not have been granted. It was granted without authority, and upon an insufficient case.

And that brings us to what we think is the real question, to wit, what, if any, relief can be granted petitioner in the present proceedings? There is no question that the rulings upon the plea and the order staying execution directly tended to hinder and delay, if not entirely defeat, the execution of our mandate. It may be admitted that, if the Circuit Court had finally ruled adversely to petitioner upon either the plea or the right to a stay of execution, the petitioner could have prosecuted a writ of error; and it may be that, if relief should be denied petitioner in the present proceedings, eventually a ruling will be had upon those questions in the Circuit Court, and from such ruling, if adverse, he can prosecute a writ of error. But the case shows that the Circuit Court has not finally ruled on either proposition, and that a ruling at any day certain is not to be expected; and to compel petitioner to await such indefinite ruling, and then possibly be driven to a writ of error, will cause irreparable injury to petitioner. In regard to the ruling staying the execution issued under the mandate of this court, we think that, in accordance with the undisputed authorities, a mandamus may issue, and that being the case, and as the full record of the proceedings upon the alleged plea are now before us, and nothing but delay and injury can result from driving petitioner to await a ruling thereon and then sue out a writ of error, we are disposed to deal with the case on the whole record as though properly before us upon a writ of error. We think such ruling is supported by sound reason. To deny relief at this time, with the full record before us, with a view that

some time in the hereafter the petitioner may bring again before us on writ of error, is to stickle for forms rather than merit and substance. This long drawn out litigation will never have an end if we ignore adjudicated rights and encourage the continued wrestling with technicalities. The case of Gaines v. Rugg, 148 U. S. 228, 13 Sup. Ct. 611, 37 L. Ed. 432, recognizes the right of the appellate court to deal with obstructions to its mandate by mandamus, and we consider it decidedly in point.

A mandamus will issue as prayed for.