**In the Matter of DIPLOMAT ELECTRIC, INC., Bankrupt.**

**William G. MILLER, Jr., Morris C. Tucker, Richard H. Roth and Henry J. Prominski, also known as, Miller, Tucker, Roth & Prominski, and Joseph A. McGowan, Appellants,**

**V. V. Radionoff, Trustee in Bankruptcy, Intervenor-Appellant,**

v.

**WESTINGHOUSE ELECTRIC SUPPLY COMPANY, a division of Westinghouse Electric Corporation, Appellee.**

**No. 73-3027.**

United States Court of Appeals, Fifth Circuit.

Aug. 12, 1974.

Rehearing Denied Sept. 5, 1974.

---

Joseph A. McGowan, Miami, Fla., for Miller and others.

Henry J. Prominski, Pompano Beach, Fla., J. B. Booher, Fort Lauderdale, Fla., for Radionoff.

Eugene C. Heiman, Richard E. Reckson, Miami, Fla., for appellee.

George A. Buchmann, Jr., Robert Rust, U. S. Atty., Miami, Fla., for other interested parties.

Before BROWN, Chief Judge, and TUTTLE and SIMPSON, Circuit Judge.

SIMPSON, Circuit Judge:

We consider two separate appeals from an order of the district court affirming rulings of a referee in Bankruptcy. Appellee Westinghouse Electric Supply Company (WESCO), a division of Westinghouse Electric Corporation, was a creditor of the bankrupt Diplomat Electric Inc. (Diplomat). In 1965 Diplomat sued WESCO in an unrelated action for defamation and ultimately obtained judgment for $200,000 which we affirmed on appeal. Diplomat Electric, Inc. v. Westinghouse Electric Supply Co., 5 Cir. 1970, 430 F.2d 38.[1] The firm of Miller, Tucker, Roth & Prominski and Joseph A. McGowan were counsel of record for Diplomat at various stages in the defamation litigation. While that suit was pending WESCO sued Diplomat for unpaid contract debts and reduced its claims to final judgments aggregating roughly $163,000. Thereafter, Diplomat filed for bankruptcy.

The district court below affirmed the referee's determination that WESCO was entitled to set off its contractual judgment against its tort liability and pay Diplomat's Trustee in Bankruptcy the remaining difference under Sec. 68 of the Bankruptcy Act.[2] The Trustee appeals that determination as an abuse of the discretion vested in the district court pursuant to its equity jurisdiction. Counsel in the defamation suit also attack the validity of the set-off and, alternatively, the further finding that it should be superior to their asserted attorneys' charging lien on the $200,000 judgment. We find neither abuse of discretion nor error demonstrated in the lower court's disposition of the case, and affirm as to each appeal.

I

We set forth only so much of the involved procedural history of this case as is necessary to our disposition of the appeals before us.

In 1965 Diplomat retained the law firm of Miller, Tucker, Roth and Prominski (special counsel) to represent it in the defamation suit. The contract of employment was apparently oral. Under its terms special counsel were to receive as compensation 33⅓% of any agreed settlement, 40% of any final judgment following a trial, and 50% of an award affirmed on appeal. The three judgments obtained by WESCO against Diplomat during the pendency of the defamation action were for materials furnished to Diplomat as electrical subcontractor on different construction jobs. Attorney McGowan joined special counsel for Diplomat in 1968 under a written employment contract, which provided for 50% of any proceeds of the defamation action to be paid to counsel as a contingent fee. At this time WESCO's claims for materials against Diplomat had been reduced to judgments, then outstanding

---

1. Diplomat's defamation action was originally disposed of in the lower court by a summary judgment in WESCO's favor. We reversed, Diplomat Electric, Inc. v. Westinghouse Electric Supply Co., 5 Cir. 1967, 378 F.2d 377. After remand Diplomat recovered judgment for $200,000 and WESCO appealed. As the text indicates, we affirmed the judgment at 430 F.2d 38. This brief recital should account for the time-consuming nature of that litigation.

2. Sec. 68 of the Bankruptcy Act, Title 11, U.S.C., Sec. 108, provides, in pertinent part:
"a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

and unpaid. Special counsel successfully prosecuted the defamation suit in district court and on appeal here, recovering, as related, a judgment for $200,000.

Shortly after this judgment in the district court for Diplomat, a voluntary petition in bankruptcy was filed in its behalf. Thereupon, WESCO filed a proof of claim with the referee with respect to its three judgments previously obtained against Diplomat. No mention ·of the defamation judgment was made in the proof of claim. Instead, in the place provided, paragraph 7 of the claim: "That there are no set-offs or counterclaims to the *same* (except . . . .)", WESCO's scrivener placed a period after the word "same", and left the remainder blank. WESCO, at that time, was in the process of perfecting its unsuccessful appeal from the $200,000 judgment. Diplomat's Bankruptcy Trustee having acquired the right to that judgment, was obliged to defend it in the court of appeals. To this end, and with the permission of the district court, he retained McGowan's services to represent him and Diplomat in the appeal.

Shortly after our affirmance of the defamation judgment, WESCO filed before the referee in Bankruptcy its "Petition to Confirm Off Set and to Resolve Conflicting Claims", asserting therein the right to offset the $200,000 judgment against it by the approximately $163,000 Diplomat owed to WESCO on the three judgments arising from the supplying of electrical materials. The referee first ordered WESCO and its surety on supersedeas bond covering the appeal from the defamation judgment, Fidelity & Deposit Co. of Maryland (Fidelity) to pay the amount of the judgment to the Trustee. Therefore, by an order of May 20, 1971, the referee denied WESCO's Petition to Confirm Off Set and further denied WESCO's later filed motion to amend the proof of claim to include the asserted right of set-off. By order of June 15, 1971, the referee granted special counsel a charging lien against the defamation judgment and

declined to find—in view of his previous determination that no right of set-off existed—whether or not that charging lien would be a superior lien to a valid set-off.

WESCO petitioned the district court for review of the referee's denial of set-off. The district court by its order of August 19, 1971, remanded the case to the referee for further factual findings. The district court held that WESCO had demonstrated a right to set-off valid on its face and that it was up to the Bankruptcy Trustee to allege and prove any affirmative defenses to that right. Apparently in issue was the absence of proof as to whether WESCO's insurer, Liberty Mutual Insurance Co. (Liberty Mutual)—which had furnished the defense to the defamation action—had paid to WESCO the amount of the Diplomat judgment against WESCO. The court made no determination that proof of payment would in fact constitute a valid affirmative defense, but found only that the proof was not demonstrated on the record before it.

Following further proceedings before him, the referee entered his final order on December 26, 1972. He found the existence of proof that Liberty Mutual had paid WESCO for its liability in the defamation action, but concluded that such payment was not an affirmative defense to a valid right of set-off. He then determined that WESCO did have a right of set-off and, finally, that it was superior to the charging lien of special counsel. This left counsel with the right to a lien only upon the net amount remaining after set-off, approximately $37,000. On petition for review this order was affirmed by the district court on June 14, 1973. The trustee and special counsel have each appealed therefrom to this court.

## II

One question common to both appeals is the propriety of setting off under Sec. 68 of the Bankruptcy Act (note 2, supra) a debt arising from tort liability against a credit based on breach of con-

tract. While all parties are aware that Sec. 68 does not distinguish between contractual and tortious debts, they recognize that courts have so distinguished them on occasion. The district court expressed its view in its memorandum opinion and order on the petition for review:

"Although the language of Sec. 68 seems mandatory, the cases uniformly hold that the right to a set-off is discretionary. See, e. g. First National Bank of Portland v. Dudley, 231 F.2d 396 (9th Cir. 1956). The principles and rules of equity jurisprudence guide the Court in the exercise of this discretion. Under the circumstances, the Court shares the opinion held by Collier that 'the better view would seem to be that under Sec. 68 tort claims may be set off against contract, or vice versa' so long as the claim asserted against the estate is provable under Sec. 63, as is WESCO's debt claim. 4 Collier on Bankruptcy, Sec. 68.04 at 879 (14th ed. 1969)".

■ Neither appellant disputes that the right of set-off is governed by the discretion of the court and that the judgments in question were both claims provable in bankruptcy under Sec. 63 of the Act. Appellants' argument then rests, as it must, on the assertion that the court abused its discretion under the facts of this case.

■ We review the lower court's exercise of discretion mindful that it should not be disturbed in the absence of clear abuse. See, for example, Godfrey v. Powell, 5 Cir. 1947, 159 F.2d 330; Williamson v. Williams, 4 Cir. 1943, 137 F.2d 298. It is difficult to discern how a district judge's choice between conflicting views on a particular point of law could ever be such an abuse, since there is authority for whichever side he takes. Appellants suggest that, in the case of *intentional* torts such an abuse obtains, and cite in support thereof only

one applicable case. Brunswick Corp. v. Clements, 6 Cir. 1970, 424 F.2d 673. We do not find *Brunswick* controlling [3] and reject appellants' claim of discretionary abuse.

In *Brunswick* the plaintiff had sold the bankrupt, Olympic Lanes, Inc., bowling lanes and pinsetters on conditional sales contracts. Olympic defaulted on its payments to Brunswick and the latter brought replevin to recover its property. In the meantime, Brunswick moved into Olympic's facilities and began running the business. In the replevin action Olympic conceded that it had defaulted in its obligation to pay, but counterclaimed for damages arising out of the conversion of personal property by Brunswick in the course of the take over. Olympic prevailed on the counterclaim, but was later adjudicated bankrupt. Brunswick sought by its proof of claim in the bankruptcy proceeding to set off its liability on the counterclaim against the debts owed it by Olympic. The Sixth Circuit on appeal reversed the allowance of set-off.

As noted in *Brunswick*, even *Collier*, who advocates set-off, acknowledges that the tort of conversion represents a well founded exception to the general rule. 4 Collier on Bankruptcy, Sec. 68.04 at 879–80, n. 50, 56 (14th ed. 1969). The rationale for the exception was outlined by the court in *Brunswick* as: "a creditor of a bankrupt should not be permitted to pay himself through the device of setoff by converting the bankrupt's property, particularly at a time when he knows of the bankrupt's insolvency." Ibid, 424 F.2d at 676. That rationale is inapplicable here. WESCO's tort was in no sense a subterfuge for gaining priority over other creditors. There was not the slightest omen of impending bankruptcy when the defamation occurred, Diplomat concededly being solvent at that time and for years thereafter. The tort when committed bore no relationship to WESCO's position as a creditor vis-a-vis other creditors.

---

3. Of course, even if we found *Brunswick* to be apposite, it would not necessarily control our decision.

It must be recognized then that the equitable policy considerations justifying denial of set-off of damages for conversion of the debtor's property may not be applied indiscriminately to every instance of intentional tort. More specifically, such considerations clearly do not apply to this case. We hold that no abuse of discretion occurred when WESCO was allowed to set off its liability under the tort judgment against the judgments it held arising from breaches of the bankrupt's contractual obligation to pay for materials furnished.

### III

As noted earlier, WESCO failed to include notice of its outstanding judgment liability to Diplomat as an off-set in its original proof of claim in the bankruptcy proceedings. But promptly upon this court's affirmation of that liability, WESCO petitioned for a confirmation of the off-set and filed a motion to amend its proof of claim. Both requests were in the first instance denied by the referee but he granted the petition after the district court's remand. The Trustee urges that the right of set-off was waived by virtue of WESCO's failure either to assert it originally in its proof of claim or to move to amend within the statutory six months time limitation after the first meeting of creditors under Sec. 57(n) of the Bankruptcy Act.[4] The Trustee cites the general rule that a creditor who proves his claim in bankruptcy without asserting any right of set-off accruing to him, is deemed to have waived it. See, for instance, 4 Collier on Bankruptcy, 14th Ed., Sec. 68.07, pps. 888–890; 9 Am.Jur.2d, Bankruptcy, Sec. 521, pps. 403–404; In re Brockton Shoe Mfg. Co., Inc., (D.C.Mass., 1934) 8 F.Supp. 959; In re Mauch Chunk Brewing Co., supra; Annot. 143 A.L.R. 451.

The district court considered and then rejected this argument on the authority of Chassen v. United States, 2 Cir. 1953,

207 F.2d 83, cert. denied, 1954, 346 U.S. 923, 74 S.Ct. 309, 98 L.Ed. 416. There the United States had inadvertently omitted to claim a set-off to which it was entitled when filing a proof of claim in bankruptcy. As here, the claim form stated that there were "no set-offs or counterclaims". The actual facts were not put forward by the government until many months after the expiration of the six months time limitation. The government then asked for permission to assert its right of set-off, and the Second Circuit held that it could do so. The action was termed "the equivalent of an amendment" and permissible since there had been no detrimental reliance on the omission by other creditors.

We consider that *Chassen* reached a sound result and approve its application to this case by the district court. Here, as in *Chassen*, no detriment to other creditors is suggested. Strangely, in view of the district court's reliance on *Chassen*, neither appellant discussed the case in their briefs to this court. The district court also relied upon *Chassen*'s alternative ground that there could be no waiver in the absence of "intentional relinquishment of a known right." Chassen v. United States, supra, 207 F.2d at 84 n. 3. WESCO insists that it omitted the set-off from its proof of claim to avoid a judicial admission of liability on the judgment while its appeal therefrom was pending. The Trustee suggests, probably correctly, that this was clearly not an estoppel situation and that WESCO's position in this respect is specious. Perhaps so, but nevertheless it was understandable that WESCO should refrain from making an admission which might later be construed as relevant to its appeal of the issue. Under these circumstances, what and all that WESCO intentionally relinquished was not its right of set-off, but only the putting of the result of its pending appeal in jeop-

---

4. The first meeting of creditors in the Diplomat bankruptcy was held June 6, 1969, so that the statutory time limit expired December 6, 1969. The petition to confirm the set-off was filed September 3, 1970, and the motion to amend the claim followed on December 18, 1970.

ardy. We do not conceive that waiver occurred under the circumstances here.

## IV

Section 68(a) of the Bankruptcy Act (note 2, supra) specifically refers to set-off in the context of "all cases of mutual debts or mutual credits" and that phrase is usually interpreted to entail "mutuality" of both obligations and obligors as essential to application. Appellants suggest that such mutuality was absent in this case for two reasons. First, the obligations were not mutual because, while Diplomat alone owed WESCO on the judgments for the contractual debts, WESCO's debt on the defamation judgment was joint and several with its surety, Fidelity, by virtue of the supersedeas bond posted on appeal. Second, the *obligors* were not mutual because Diplomat alone owed WESCO, whereas WESCO was reimbursed by its insurer, Liberty Mutual, and was therefore not personally obligated to Diplomat.

■ We can say little in embellishment of the district court's disposition of the first of these claims:

"The contention that obtaining a surety who becomes a joint obligor destroys mutuality is objectionable from a policy standpoint. The practice of posting supersedeas bonds permits an unhurried appellate resolution of questions raised on appeal and avoids irreparable harm to the appellant in the interim. It should not be undermined in the name of equity by engrafting this proposed restriction on the right to set-off.

"No cases on point are cited by the petitioners, as they rely instead on a more general discussion of the mutuality requirement. The many cases dealing with assignments are of course inapplicable. It would be in-

equitable to permit a creditor to assign his claim to another who can use it as a set-off. In this case, that problem does not exist. The judgment debt in question was owed by WESCO to Diplomat at the time of Diplomat's petition. The supersedeas merely suspended operation of the judgment and prevented execution on it. The policy of Sec. 68 is in no way offended by permitting a set-off in such a situation."

The courts have uniformly interpreted Section 68 of the Bankruptcy Act as did the court below whenever joint and several obligations have been urged as a bar to mutuality. See, e. g., In re Sherman Plastering Corp., 2 Cir. 1965, 346 F.2d 492; 4 Remington on Bankruptcy, Mutual Debts and Credits, Sec. 1465 Joint obligations; partnership debts (and cases there cited).

■ Appellants' second claim with respect to a lack of mutuality of obligors by reason of WESCO's being insured smacks of sophistry. As noted by the district court, "WESCO should not be penalized for its foresight in providing insurance." We fail to find either policy or authority supportive of the proposition that WESCO could or did destroy the mutuality of its claim by the act of insuring against just such a contingency as occurred. In terms of plain logic, WESCO, not its insurer, was obligated to pay the judgment. Diplomat had no legal recourse against the insurer. We do not construe the presence of insurance as defeating the mutuality created by Diplomat's judgment against WESCO.

## V

■ Special counsel were most assuredly entitled under Florida law, which we are *Erie*-bound to follow, to a charging lien for the services rendered in connection with the defamation suit.[5]

---

5. Worley v. Phillips, Fla.App.1972, 264 So.2d 42; 3 Fla.Jur., Attorneys at Law, Sec. 73; Winn v. City of Cocoa, Fla.1954, 75 So.2d 909; Carter v. Davis, 1858, 8 Fla. 183; Carter v. Bennett, 1855, 6 Fla. 214; Randall v. Archer, 1854, 5 Fla. 438.

See also, Chancey v. Bauer, 5 Cir. 1938, 97 F.2d 293: Webster v. Sweat, 5 Cir. 1933, 65 F.2d 109; L. Bucki & Son Lumber Co. v. Atlantic Lumber Co., S.D.Fla.1904, 128 F. 332.

The final issue for our resolution is the priority of that lien vis-a-vis the set-off to which WESCO is entitled. If the charging lien is superior, appellants will receive a percentage of the full $200,000 judgment; otherwise, they may only share in the net remaining after set-off, as the district court held.

The district court resolved the issue thusly:

"There is no statutory provision for charging liens in Florida, so they are governed by common law principles . . . .

"The briefs illuminate the split of authority on this question. Florida courts have not spoken to the point since 1855. In Carter v. Bennett, 6 Fla. 214 (1855), the Supreme Court adopted as its guide:

'The doctrine of the Courts of Chancery in England, as laid down in Ex parte Rhodes, 15 ves. 541 by Lord Eldon, that the right of set-off prevails in general cases, so as to interfere with the Solicitors lien upon the debt recovered . . . .' Id. at 258. .

"This statement is in accord with a line of cases from other jurisdictions where the charging lien is held to be superior to set-offs acquired subsequent to the attachment of the lien, but inferior to pre-existing judgments . . . ."

The district court thus concluded that Florida follows the common law rule which distinguishes pre-existing and after-acquired judgments when considering the priority between set-offs and charging liens. Further authority cited was Lewis v. Railroad Retirement Board, 1951, 256 Ala. 930, 54 So.2d 777, cert. denied 1952, 343 U.S. 919, 72 S.Ct. 677, 96 L.Ed. 1333; United States F. & G. v. Levy, 5 Cir. 1935, 77 F.2d 972.

 We agree with the district court. Florida has no statute fixing priorities in this situation so we look to common law. Nichols v. Kroelinger, Fla.1950, 46 So.2d 722, 724. The district court correctly assessed the status of the common law, and the fact that the contractual judgments preceded the defamation judgment gives superiority over the charging lien to WESCO's right of set-off.[6]

The judgment appealed from was correct.

Affirmed.

6. In addition to the authorities cited in the text, see 7 Am.Jur.2d Attorneys at Law, Sec. 289–90, Priority of lien; 34 A.L.R. 323, supplemented by 51 A.L.R. 1268, and cases cited therein. The cases cited by appellant are neither factually apposite to the case at bar, nor inconsistent with the estimate of the common law distilled from the above authorities: i. e. a pre-existing judgment is superior to a charging lien on a later acquired judgment.